MATADOR LAND & CATTLE COMPANY, LIMITED, v. ANNA B. COOPER
ET AL.

Decided April 15, 1905.

**1.—Innocent Purchaser—Wife's Equitable Title—Notice by Recording.**

Where land which was the separate estate of the wife, although the legal title was in the husband, was conveyed by them by joint deed to a third person and the deed was duly recorded, and thereafter the land was levied on and sold under execution against the husband, one claiming under the levy and sale could not be an innocent purchaser since the record of the deed charged notice, and the execution debtor had no apparent title at the date of the levy.

**2.—Same—Deed in Fraud of Creditors.**

A deed by the husband and wife of land, the legal title to which is in his name, but which is, in fact, the separate estate of the wife, and held by him in trust for her, is not fraudulent as to his creditors.

**3.—Resulting Trust—Using Wife's Money.**

Where a husband purchased land certificates with the wife's separate funds, taking the title in his own name, there was at once and by implication of law a resulting trust in the wife's favor.

**4.—Burden of Proof—Trespass to Try Title.**

A requested charge in trespass to try title, that the burden of proof was on defendants to establish certain matters of defense by "clear and positive testimony," was properly refused as imposing too great a burden as to the requisite quantum of proof.

**5.—Evidence—Declarations as to Title.**

Declarations by a husband in whose name stood the legal title of land equitably owned by the wife, that the land belonged to her, were admissible in her favor as against parties claiming the land under execution sale by virtue of a judgment against the husband, but his declarations in favor of his own title were properly excluded.

**6.—Same—Proof of Equitable Title in Wife.**

In an action against a wife to recover land bought by plaintiff's vendor under execution against her husband it was competent for her to testify that she turned over to her husband the money with which the land was bought,

irrespective of whether or not plaintiff had notice or knowledge of the transaction or that she claimed any interest in the land prior to its own purchase thereof.

**7.—Estoppel Against Married Woman.**

To estop a married woman from asserting rights to land she must have been guilty of some positive act of fraud, or of an act of concealment or suppression which would in law be equivalent thereto, which act, representation or concealment was intended to cause another to alter his position or condition, and has actually had such effect. Mere failure of the wife to give notice of her right to land, the legal title to which is in the husband's name, to officers of the State, who accept her husband as surety on an official bond, will not estop her from claiming the land as against a purchaser of it through an execution sale made for and to the State.

Appeal from the District Court of Motley. Tried below before Hon. J. M. Morgan.

*Browning, Madden & Truelove* and *Cowan & Burney,* for appellant.—
1. Plaintiff was an innocent purchaser for value, without notice of any claim that the land in controversy was the separate property of Mrs. Anna B. Cooper, and took the title free from such claim. White & Newman v. Frank, 91 Texas, 67; Davis v. Harman, 29 S. W. Rep., 492; Parker v. Coop, 60 Texas, 112; Holmes v. Buckner, 67 Texas, 107; Cook v. Bremond, 27 Texas, 457; Belt v. Racquet, 27 Texas, 481; Neyland v. Lumber Co., 64 S. W. Rep., 698; Stewart v. Crosby, 26 S. W. Rep., 138; Frank v. Heidenheimer, 84 Texas, 644; Stiles v. Japhet, 84 Texas, 91; Wallace v. Campbell, 54 Texas, 89.

2. The deed from Arthur B. Cooper and wife, Anna B. Cooper, to Sam W. Cooper, was not notice to plaintiff that Anna B. Cooper owned any interest in the property in controversy as her separate property, because (a) plaintiff did not, in fact, know of its existence when it bought the land from the State; (b) the record of a deed from one who is a stranger to the record title is not constructive notice; (c) the fact that Mrs. Cooper joined in the deed does not give notice that the property is other than community. Cook v. Bremond, 27 Texas, 457; Stiles v. Japhet, 84 Texas, 91; Frank v. Heidenheimer, 84 Texas, 644; Taylor v. Harrison, 47 Texas, 454; McLouth v. Hurt, 51 Texas, 115.

3. The title which Mrs. Cooper took from Samuel W. Cooper will be considered as a transfer of the legal title of Arthur B. Cooper, as evidenced by the patents, and can not have engrafted upon it a resulting trust to support it, when otherwise it would be void as to appellant. See cases cited above.

4. The mere fact that the wife's money was used to pay for the certificates does not, as a matter of law, constitute a resulting trust, where, as in this case, there was evidence tending strongly to show that there was no such intention at the time, and that the wife acquiesced in the husband taking the title and using the land as his own for twenty years. Cunis v. Burland, 1 Posey, Un. Cas., 469; Parker v. Coop, 60 Texas, 112; Smith v. Strahan, 16 Texas, 314; Crenshaw v. Claybrook, 11 S. W. Rep., 536; 15 Am. & Eng. Ency. Law, pp. 1136, 1137, title, Rebutting Presumption of Resulting Trust; Proof of Intention.

5. It was the duty of the court, under the facts of this case, to charge the jury as to the character of evidence required to establish a

resulting trust, and not leave it to be established on a mere preponderance of the evidence, given wholly by one who was the recipient of the benefits of the verdict, especially as her evidence contained many contradictory and improbable statements. Markham v. Carothers, 47 Texas, 28; Howard v. Zimpleman, 14 S. W. Rep., 61; Goodrich v. Hicks, 48 S. W. Rep., 798, 799; Focke v. Buchanan, 59 S. W. Rep., 820; 15 New Ency. of Law, 1161.

6. Mrs. Cooper's failure to give notice to the State of Texas of her claim to said land, if she claimed it as her separate property by reason of a resulting trust, estops her from now asserting that said land belonged to her by virtue of the fact that she furnished the money to pay for the certificates with which said land was located. Isminger v. Criswell, 67 N. W. Rep., 289; Porter v. Gobel, 55 N. W. Rep., 530; Humes v. Scruggs, 94 U. S., 23, 24 L. Ed., 51; Cravens v. Booth, 8 Texas, 249; O'Brien v. Hilburn, 9 Texas, 299; Allen v. Urquhart, 19 Texas, 487; Hopkins v. Joyce, 71 Wis., 443; Minnech v. Shaffer, 135 Ind., 634; Besson v. Eveland, 26 N. J., 468; Scrutchfield v. Sauter, 119 Mo., 615; Dobbin v. Gardiner, 4 L. R. A., 335.

7. Married women can not enjoy their enlarged rights of action and of property and remain irresponsible for the ordinary legal and equitable results of their conduct. Incident to the power of married women to deal with others is the capacity to be bound, and to be estopped by their conduct, when the enforcement of the principle of estoppel is necessary for the protection of those with whom they deal. Norton v. Nichols, 24 Neb., 760; Knight v. Thayer, 125 Mass., 25; Bodine v. Killeen, 53 N. Y., 93; Powell's App., 98 Pa., 403; Fryer v. Rishell, 84 Pa.. 521; Godfrey v. Thornton, 46 Wis., 677; Lavassar v. Washburne, 50 Wis., 200; Baum v. Mullen, 47 N. Y., 577; Patterson v. Lawrence, 90 Ill., 174; Reis v. Lawrence, 63 Cal., 129; Sharp v. Foy, L. R. 4 Ch. App., 35; 2 Pom., Eq. Jur., 814.

*Fires & Decker* and *Matlock, Miller & Dycus,* for appellees.—1. One can not be an innocent purchaser of property when the person under whom he claims was not invested with the apparent title at the time of the purchase; and, where an instrument by which the title to real estate is affected is properly recorded, the record thereof is constructive notice to subsequent purchasers under the same grantor, and is notice to such purchasers of the contents of such deed. Wade on Notice, p. 72, sec. 97, and authorities cited; Edwards v. Barwise, 69 Texas, 87; Book 3, Rose's Notes on Texas Reports, p. 875; Tinsley v. Park Co., 59 S. W. Rep., 631.

2. When the husband invests money which is the separate property of his wife in the purchase of other property, the property so purchased, ipso facto, becomes the separate property of the wife, even though the deed of conveyance thereof be taken out in the name of the husband. Speer's Law of Married Women, sec. 239, pp. 249, 250; Parker v. Coop, 60 Texas, 116; Edwards v. Brown, 68 Texas, 334; McIntyre v. Chappell, 4 Texas, 198, 199; Montgomery v. Brown, 1 Texas Civ. App., 755; Glascock v. Hamilton, 62 Texas, 153; Bank v. Weems. 69 Texas, 499; Schmitt v. Huppman, 73 Texas, 115; Atwell v. Watkins, 36 S. W. Rep., 107; Blum v. Rogers, 71 Texas, 676, 679; Johnson v. First Nat.

Bank, 40 S. W. Rep., 335; Love v. Robertson, 7 Texas, 6; Smith v. Bailey, 66 Texas, 554; Rose v. Houston, 11 Texas, 326; Chapman v. Allen, 15 Texas, 283; Hall v. Hall, 52 Texas, 299.

3.  A resulting trust must arise and exist, if at all, at the very instant the deed is taken, and it can not be created by any prior or subsequent agreement.   Parker v. Coop, 60 Texas, 118; Gardner v. Rundell, 70 Texas, 456; Blum v. Rogers, 71 Texas, 676; Kirby v. Moody, 84 Texas, 203; Bank v. Eustis, 28 S. W. Rep., 229; Arnold v. Ellis, 48 S. W. Rep., 886; Hirschfield v. Howard, 59 S. W. Rep., 58; Edwards v. Brown, 68 Texas, 334; Parker v. Coop, 60 Texas, 112; King v. Gilleland, 60 Texas, 271; Love v. Robertson, 7 Texas, 6; Huston v. Curl, 8 Texas, 239; Stoker v. Bailey, 62 Texas, 299; Cleveland v. Cole, 65 Texas, 402.

4.  The declarations of a grantor, made before execution of the deed, in disparagement of his title, are admissible against his grantee, but his self-serving declarations are not admissible.   Snow v. Starr, 75 Texas, 416; Hancock v. Tram Lumber Co., 65 Texas, 233; 5 Am. & Eng. Ency. of Law, p. 367; 1 Greenl. on Ev., secs. 109, 189.

5.  A charge which requires of plaintiff more than a preponderance of the evidence to entitle him to recover is erroneous.   Howard v. Zimpleman, 14 S. W. Rep., 61; Moore v. Stone, 36 S. W. Rep., 909; Thompson v. Wilson, 60 S. W. Rep., 355.

6.  To estop a married woman from asserting rights to land, she must be guilty of some positive act of fraud or some act of concealment or suppression which, in law, will be equivalent thereto.   Johnson v. Bryan, 62 Texas, 626; Stone v. Sledge, 24 S. W. Rep., 699; Williams v. Ellingsworth, 75 Texas, 480; McLaren v. Jones, 89 Texas, 135; Grandjean v. San Antonio, 38 S. W. Rep., 841; Steed v. Petty, 65 Texas, 496; Wooldridge v. Hancock, 70 Texas, 21; Smith v. Powell, 23 S. W. Rep., 1112; Moore v. Blagge, 34 S. W. Rep., 319; Daniel v. Mason, 90 Texas, 244; Black v. Garner, 63 S. W. Rep., 921; Owens v. Land Company, 32 S. W. Rep., 190; Munk v. Weidner, 29 S. W. Rep., 409; Robert v. Ezell, 32 S. W. Rep., 362; Williamson v. Gore, 73 S. W. Rep., 563.

SPEER, ASSOCIATE JUSTICE.—This is an ordinary action of trespass to try title, instituted by appellant against appellees to recover the title and possession of three sections of land, containing 640 acres each, situated in Motley County.   The pleadings of the parties were sufficient to raise the issues hereinafter discussed.   The cause was submitted to a jury upon special issues, among which was the following: "Were, or not, the certificates by virtue of which the lands in controversy were located, paid for with money owned by Anna B. Cooper before her marriage to Arthur B. Cooper, and which was her separate property at such time of purchase?" accompanied by a direction that, in the event such question should be answered in the affirmative, the jury would not consider the other issues submitted to them.   Having answered this question in the affirmative, the court thereupon entered judgment in favor of the appellees, from which appellant has prosecuted its appeal to this court.

The questions raised under the various assignments will be better un-

derstood from the following brief statement: In December, 1878, appellee, Anna Benson Nelson, was married to Arthur B. Cooper. At the time of their marriage she owned in her separate right about $600, which she had saved from her earnings as a house servant, and Arthur B. Cooper owned only the sum of $2.50. In January, 1879, Mrs. Cooper turned over to her husband about $500, with which to purchase land certificates, and with this money he subsequently bought the certificates by virtue of which the lands in controversy were located, taking the transfers thereof in his own name. Patents were subsequently issued to him as the assignee of these certificates. On September 4, 1895, the State of Texas instituted suit in the District Court of Travis County against Joe Beckham, tax collector of Motley County, and Arthur B. Cooper and others, as his sureties on such bond. Citation was served upon Cooper September 17, 1895. Judgment for the State for the sum of $2,803.94 was rendered on November 4, 1895, upon which judgment an execution to Motley County was issued and levied upon the lands in controversy, as the property of Arthur B. Cooper, February 3, 1896. On the first Tuesday in March, 1896, they were sold to the State for the sum of $320 for each tract, and proper deeds were executed, delivered and recorded. On April 12, 1899, the State, by proper deed, conveyed to appellant, who paid a valuable consideration for the land. On September 14, 1895, Arthur B. Cooper, joined by his wife, the appellee, Anna B. Cooper, transferred all the lands to Samuel W. Cooper by general warranty deeds, which deeds were duly recorded in the deed records of Motley County on September 17, 1895. In the year 1900 Samuel W. Cooper conveyed these lands to the appellee, Anna B. Cooper, who, in the meantime, had been divorced from her husband, Arthur B. Cooper.

The gist of the propositions asserted by appellant under the first group of assignments is, that appellant was a bona fide purchaser for value, without notice of the rights of appellee, Anna B. Cooper, and took the title free from such claim. We would probably dismiss this contention in a very cursory manner were it not for the insistence of appellant, that the deeds of Arthur B. and Anna B. Cooper to Samuel W. Cooper were made in fraud of Arthur B. Cooper's creditors, and for that reason were void, and the same as no deeds, authorizing appellant to rely upon the real title being in Arthur B. Cooper at the time of the levy and sale, as it appeared from the records to have been prior to such fraudulent transfer. A great number of authorities have been cited under these propositions, but none of them can be construed as supporting the contention that appellant is a bona fide purchaser for value without notice. It is insisted that the deed from Arthur B. Cooper and wife was not notice to appellant that the latter owned any interest in the property, because (1) appellant did not, in fact, know of its existence when it bought the land from the State; (2) the record of a deed from one who is a stranger to the record title is not constructive notice; and (3) the fact that Mrs. Cooper joined in the deed did not give notice that the property is other than community. But we are of the opinion that these contentions proceed from a misconception of the applicability of the doctrine of innocent purchaser to the state of case here shown.

At the date of the levy of the writ of execution, the deed from Arthur B. and Anna B. Cooper to Samuel W. Cooper being then of record,

the apparent title was in Samuel W. Cooper, and not in Arthur B. Cooper. Whether appellant had actual notice of this deed or not, it is yet charged with notice of its contents, since whatever rights it has in the property were subsequently acquired under the grantor, Arthur B. Cooper. (White v. McGregor, 92 Texas, 556, and authorities there cited; Edwards v. Barwise, 69 Texas, 87.) So that, the title to the property appearing to be in Samuel W. Cooper at the date of the levy as against Arthur B. Cooper, of which fact appellant is charged with notice, it is difficult to see how it can be an innocent purchaser. In most, if not every one, of the cases cited by appellant, the person protected as an innocent purchaser acquired his title from the apparent owner of the land. It has never been thought proper to take one man's property in execution for the payment of another's debts. And it is only where a strong equity supervenes that such a thing has been permitted to prevent the purchaser being deceived to his hurt by the appearance of title in the debtor. But where, as here, the debtor has no apparent title, the doctrine of innocent purchaser finds no place for application. We know of no case where a purchaser has been held to be a bona fide purchaser for value without notice as against one who holds under a senior recorded title, and we doubt if any can be found. But, contends the appellant, the deeds to Samuel W. Cooper having been made with the intention upon the part of Arthur B. Cooper to defraud his creditors, the rule should be different. Let us see. Suppose such conveyance was made with such intention, yet, if Samuel W. Cooper was in no way involved in the attempted fraud, and paid value, it can not be seriously contended that he would not take a good title. Yet appellant's contention is that it would take title as an innocent purchaser, even though his deed was duly recorded. Nor would the illustration be less apt because the conveyance to Samuel W. Cooper may have been in execution of a trust rather than upon a full consideration paid.

But the conveyance by Arthur B. Cooper and wife can not in any sense be said to be in fraud of Arthur B. Cooper's creditors. It is elementary that a conveyance by a debtor of property in which his creditors have, and can have, no interest or concern, is not fraudulent as to such creditors. (Evans v. Welborn, 74 Texas, 530; McClelland v. Barnard, 81 S. W. Rep., 591.) In the case first cited, which is strikingly similar upon this point to the one before us, it is said: "The land having been, at the time of its conveyance by William and Duanna Welborn to Thomas Welborn, the separate property of the wife, it was not liable for the husband's debts, and, therefore, no kind of conveyance or disposition of it could have had the effect to defraud his creditors. The fact that the fears of the parties were excited, and that they were willing to convey it fraudulently, if that was necessary to protect it, or that, if it had been the husband's property, they would have committed a fraud by conveying it to avoid the payment of his debts, does not change or affect the rule." So here, if the lands were really the property of Anna B. Cooper, and were held by Arthur B. Cooper in trust merely for her, the legal and moral duty imposed upon him was to protect the same from seizure by his creditors. This, we think, was as effectively

done by the conveyance to Samuel W. Cooper as if the legal title had been conveyed directly to Anna B. Cooper, the equitable owner.

Under the next group of assignments, relating to the issue of resulting trust growing out of the investment by the husband of the wife's funds, it is urged that the mere fact that the wife's money was used to pay for the certificates does not, as a matter of law, constitute a resulting trust, since the evidence tends strongly to show that there was no such intention at the time, and the wife acquiesced in the husband's taking the title and using the land as his own for twenty years.   Differently stated, in the language of one of the assignments raising this question, the contention is that "a resulting trust would not arise in this case simply from the fact, if it be a fact, that the money which was used in the purchase of said certificates, or any of them, was the separate estate of Anna B. Cooper, nor from the fact that she let her husband have the money, if she did so, to buy the land certificates, but could only arise out of the transaction at the time the money was advanced, if it was advanced, upon an agreement between Anna B. Cooper and Arthur B. Cooper that the purchase of said certificate or certificates was made for the separate estate of Anna B. Cooper, and such agreement must have existed at the instant such certificate or certificates were purchased; and no subsequent agreement between Arthur B. Cooper and Anna B. Cooper, and subsequent declarations of Arthur B. Cooper or Anna B. Cooper, would constitute such resulting trust."   In short, the court was requested by appellant to give the above in charge to the jury.   We can not sustain this contention; indeed, we think the law is quite the reverse.   The beneficiary's rights in such a case are not created by agreements made prior or subsequent to the acquisition of the property, but the transaction must be such that a trust arises at the time.   Such a trust is not the result of contract at all.   It arises by implication of law, if at all, at the very moment of the acquisition of the property, because the beneficiary's means have entered, in whole or in part, into the purchase.   (Speer's Law of Married Women, paragraph 239, and authorities there cited.)   If Mrs. Cooper's separate money paid for the land certificates the land became equitably hers—a trust resulted in her favor—irrespective of the agreement of the parties that such should be the case.   Indeed, it would be so even though the husband not only did not make such agreement, but really intended to deprive her of all interest in the land.   It has been repeatedly held that, where the husband invests money which is the separate property of his wife in the purchase of other property, taking the conveyance in his own name, that a trust immediately arises in favor of the wife. (Parker v. Coop, 60 Texas, 116; Edwards v. Brown, 68 Texas, 334; Blum v. Rogers, 71 Texas, 676; McCamey v. Thorp, 61 Texas, 648; Ross v. Karnrumpf, 64 Texas, 390; Evans v. Welborn, 74 Texas, 530.)

The thirteenth assignment of error, which is submitted as a proposition, complains of the refusal of the court to instruct the jury that the burden of proof was on the appellees to establish, by "clear and positive testimony," among other things, "that, at the time Arthur B. Cooper took title to such certificates in his own name, it was intended that the same was purchased as the property and for the separate estate of said Anna B. Cooper."   This clearly was not error, not only for the

reason above given, but for the additional reason that it imposed too great a burden upon the appellees as to the quantum of proof required. (Howard v. Zimpleman, 14 S. W. Rep., 61; Moore v. Stone, 36 S. W. Rep., 909; Torrey v. Cameron, 73 Texas, 583.)

The appellees were permitted to introduce in evidence proof of the declarations of Arthur B. Cooper, to the effect that the certificates, and the land located by virtue of them, belonged to appellee, Anna B. Cooper. In this there was no error. We understand it to be the rule that declarations made by one while in possession of land, in disparagement of the title of declarant, are admissible as original evidence. (Snow v. Starr, 75 Texas, 416; Hancock v. Tram Lumber Company, 65 Texas, 233; 1 Greenleaf on Evidence, par. 109.) But his declarations in favor of his own title are inadmissible in favor of those claiming under him, and the court therefore committed no error in excluding testimony as to such declarations. (Snow v. Starr, supra; Gilbert v. Odum, 69 Texas, 670; Hickman v. Gillum, 66 Texas, 314; McDow v. Rabb, 56 Texas, 154; Hays v. Hays, 66 Texas, 606.) Such declarations are clearly self-serving, and, for obvious reasons, should be excluded, otherwise a party in possession might acquire title by repeated declarations of ownership made in the absence of the real owner.

Neither was there error in permitting the appellee, Anna B. Cooper, to testify that she turned over money to her husband with which to buy land certificates. This was a fact about which she was competent to testify, and it was immaterial that appellant had no notice or knowledge of the transaction, or that she claimed any interest in the land previous to its purchase thereof from the State.

This brings us to a discussion of the question of estoppel as against Anna B. Cooper to assert her title to the lands in controversy. It is insisted by appellant that, when Arthur B. Cooper became surety upon the bond of Joe Beckham, as tax collector of Motley County, he did so upon the representation that he was the owner of the lands in controversy, and that Mrs. Cooper knew of this fact, and failed to give notice to the State of Texas of her claim to the land, and is, therefore, now estopped to assert that she has any interest by virtue of the fact that she furnished the money to pay for the certificates. To estop a married woman from asserting rights to land, she must have been guilty of some positive act of fraud, or of an act of concealment or suppression which, in law, would be equivalent thereto, which act, representation or concealment was intended to cause another to alter his position or condition and has actually had such effect. (Johnson v. Bryan, 62 Texas, 623; Stone v. Sledge, 87 Texas, 49, 24 S. W. Rep., 697, and 26 S. W. Rep., 1068; Williams v. Ellingsworth, 75 Texas, 480, 12 S. W. Rep., 746; McLaren v. Jones, 89 Texas, 131, 33 S. W. Rep., 849; Speer's Law of Married Women, par. 128.) This is the general rule, and, under the facts of this case, we see no reason why this general rule would not prevent the estoppel. The case of Bicocchi v. Casey-Swasey Company (91 Texas, 259) is a case calling more loudly for the application of the doctrine of estoppel under such circumstances than the one before us. The holding in that case, if any other authority than those above cited were needed, would require us to overrule the assignment presenting this question.

The evidence is sufficient to authorize the jury's finding in response to

the third interrogatory, that the lands in controversy were located by virtue of certificates paid for with money belonging to the separate estate of appellee, Anna B. Cooper, and such finding necessarily determines the case in her favor.

All assignments of error are therefore overruled, and the judgment of the District Court is affirmed.

*Affirmed.*